**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

TODD ALFONZO TABB,

    Petitioner,

v.                        Civil Action No. 3:18CV299

BETH CABELL,

    Respondent.

**REPORT AND RECOMMENDATION**

Todd Alfonzo Tabb, a Virginia state prisoner proceeding <u>pro se</u>, brings this petition pursuant to 28 U.S.C. § 2254 ("§ 2254 Petition," ECF No. 1) challenging his conviction in the Circuit Court for the County of Charles City, Virginia ("Circuit Court"). Tabb argues that he is entitled to relief on the following grounds:[1]

| | |
|---|---|
| Claim One: | Counsel rendered ineffective assistance because counsel "allowed not one, but two jurors to remain on the jury, even after [Tabb] informed [counsel] of the conflict between [himself] and the two jurors," resulting in a "conflict of interest/partial jury." (§ 2254 Pet. 5.) |
| Claim Two: | Counsel rendered ineffective assistance when "counsel told [Tabb] that he could not appeal a jury trial verdict." (<u>Id.</u> at 6.) |
| Claim Three: | Counsel rendered ineffective assistance because "counsel improperly withdrew the Government's plea offer" and "misled and gave [Tabb] erroneous advice during the plea- |

---

[1] The Court employs the pagination assigned by the CM/ECF docketing system for citations to Tabb's submissions. The Court corrects the spelling, punctuation, and capitalization in the quotations from Tabb's submissions.

> bargaining process" by "[encouraging] [Tabb]
> not to enter into the Government's plea
> offer." (Id. at 8.)

The matter is before the Court for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). Respondent filed a Motion to Dismiss, asserting that Tabb's claims lack merit. (ECF No. 5.) Despite being given Roseboro[2] notice, Tabb has not responded. For the reasons that follow, it is RECOMMENDED that Respondent's Motion to Dismiss (ECF No. 5) be GRANTED and Tabb's § 2254 Petition (ECF No. 1) be DENIED because Tabb's claims are without merit.

**A.   Procedural History**

On March 15, 2016, a jury convicted Tabb of one count of malicious wounding. See Commonwealth v. Tabb, No. CR15000041-00, at 1-3 (Va. Cir. Ct. Apr. 22, 2016). The Circuit Court entered the Sentencing Order on June 17, 2016, and sentenced Tabb to five years of incarceration. Commonwealth v. Tabb, No. CR15000041-00, at 1-2 (Va. Cir. Ct. June 17, 2016). On July 1, 2016, Tabb, proceeding with counsel, filed a Notice of Appeal.[3] Notice of Appeal, Commonwealth v. Tabb, No. CR15000041-00 (Va. Cir. Ct. filed July 1, 2016). On October 17, 2017, the Court of Appeals of

---

[2] Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975).

[3] Respondent mistakenly indicates that Tabb did not appeal his conviction. (Br. Supp. Mot. Dismiss 2, ECF No. 7.) However, Respondent's misstatement does not alter the Court's analysis as set forth herein.

Virginia denied the petition for appeal.  Tabb v. Commonwealth, No. 1279-16-2 (Va. Ct. App. Oct. 17, 2017).

On December 21, 2016, the Court received Tabb's first petition pursuant to 28 U.S.C. § 2254 ("First § 2254 Petition").  See Tabb v. Clarke, No. 3:16CV995, 2017 WL 4052382, at *1 (E.D. Va. Sept. 12, 2017).  The Court dismissed Tabb's First § 2254 Petition "without prejudice to Tabb's right to refile once he has exhausted his state court remedies."  Id.

On May 4, 2017, Tabb filed a petition for a writ of habeas corpus in the Supreme Court of Virginia raising all three of the claims he presents in the instant § 2254 Petition.  See Petition for Writ of Habeas Corpus at 1, Tabb v. Commonwealth, No. 170769 (Va. filed May 4, 2017).  The Supreme Court of Virginia reviewed the merits of Tabb's state habeas petition and dismissed the petition.  (ECF No. 1-2, at 1-4.)  Tabb subsequently filed the instant § 2254 Petition.  (§ 2254 Pet. 1.)

**B.   Applicable Constraints Upon Habeas Review**

In order to obtain federal habeas relief, at a minimum, a petitioner must demonstrate that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).   The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") further circumscribed this Court's authority to grant relief by way of a writ of habeas corpus. Specifically, "[s]tate court factual determinations are presumed

3

to be correct and may be rebutted only by clear and convincing evidence." Gray v. Branker, 529 F.3d 220, 228 (4th Cir. 2008) (citing 28 U.S.C. § 2254(e)(1)). Additionally, under 28 U.S.C. § 2254(d), a federal court may not grant a writ of habeas corpus based on any claim that was adjudicated on the merits in state court unless the adjudicated claim:

> **(1)** resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> **(2)** resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Supreme Court has emphasized that the question "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

## C. Ineffective Assistance of Counsel

To demonstrate ineffective assistance of counsel, a convicted defendant must show first that counsel's representation was deficient and, second, that the deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). To satisfy the deficient performance prong of Strickland, the convicted defendant must overcome the "'strong presumption' that

counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch v. Corcoran, 273 F.3d 577, 588 (4th Cir. 2001) (quoting Strickland, 466 U.S. at 689). The prejudice component requires a defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694. In analyzing ineffective assistance of counsel claims, it is not necessary to determine whether counsel performed deficiently if the claim is readily dismissed for lack of prejudice. Id. at 697.

Respondent acknowledges that Tabb raised his instant three claims in his state habeas petition before the Supreme Court of Virginia. (Br. Supp. Mot. Dismiss 2, ECF No. 7.) In its dismissal of Tabb's habeas petition, the Supreme Court of Virginia identified four claims raised by Tabb. (See ECF No. 1-2, at 1-3.) The claims that the Supreme Court of Virginia identified as Claims (a) and (b) are raised in Claim One in the instant § 2254 Petition, and the claims that the Supreme Court of Virginia identified as Claims (c) and (d) are presented in Claims Two and Three, respectively. (Id. at 1-3; § 2254 Pet. 5-8.)

As discussed in detail below, the Court has reviewed the entirety of Tabb's § 2254 Petition and attachments, and the state

court record, and concludes that the Supreme Court of Virginia's determination that Tabb's claims lack merit is not unreasonable.

1.  **Claim One – Counsel's Failure to Strike Two Jury Members**

In Claim One, Tabb argues that counsel rendered ineffective assistance because counsel "allowed not one, but two jurors to remain on the jury, even after [Tabb] informed [counsel] of the conflict between [himself] and the two jurors." (§ 2254 Pet. 5.) In his Memorandum of Law, which he attached to his § 2254 Petition, Tabb identifies the two jurors as Jane Harris-Coleman and Karen Smith.  (ECF No. 1-1, at 6.)[4]  In Tabb's state habeas petition, this claim was presented as two separate claims, which the Supreme Court of Virginia identified as Claims (a) and (b).  (See ECF No. 1-2, at 1-2.)

---

[4] In the context of addressing Claim One in his Memorandum of Law, Tabb presents case citations and quotations from these cases regarding "Cumulative Error Analysis in a Habeas Appeal."  (ECF No. 1-1, at 5.)  Tabb does not present any supporting argument or facts about any cumulative error in his case.  (See id.)  To the extent that Tabb seeks to add vague, new claims in his Memorandum of Law, the Court notes that Tabb cannot add new claims by a passing reference in this submission.  Cf. Snyder v. United States, 263 F. App'x 778, 779-80 (11th Cir. 2008) (refusing to consider petitioner's statement in a reply brief as an attempt to amend his § 2255 motion to add a new claim); E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 847 F. Supp. 2d 843, 851 n.9 (E.D. Va. 2012); Equity in Athletics, Inc. v. Dep't of Educ., 504 F. Supp. 2d 88, 111 (W.D. Va. 2007) (citations omitted) (explaining that "new legal theories must be added by way of amended pleadings, not by arguments asserted in legal briefs").  Moreover, counsel's "acts or omissions 'that are not unconstitutional individually cannot be added together to create a constitutional violation.'"  Fisher v. Angelone, 163 F.3d 835, 853 (4th Cir. 1998) (quoting Wainright v. Lockhart, 80 F.3d 1226, 1233 (8th Cir. 1996)).

In explaining and rejecting Claims (a) and (b), which are presented as Claim One here, the Supreme Court of Virginia found:

> In claims (a) and (b), petitioner contends he was denied the effective assistance of counsel when trial counsel allowed two unidentified prospective jurors "one who attended school with the petitioner, and the one who previously testified against petitioner's brother, to remain on the jury" after petitioner informed counsel there was a conflict between the petitioner and the jurors.
>
> The Court holds claims (a) and (b) satisfy neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984). A criminal defendant has a constitutional right to an impartial jury. U.S. Const. Amends. VI and XIV; Va. Const. art. I, § 8. Petitioner, however, fails to name the jurors he contends counsel should have objected to, or to show how the jurors were unable to "stand indifferent in the cause." Code § 8.01-358. The record, including the trial transcript, demonstrates that only two prospective jurors, Wilbert Graham and Jane Harris-Coleman, stated they knew petitioner. During voir dire, prospective juror Harris-Coleman stated she knew petitioner "from school." The Commonwealth asked if she could "sit in judgment" of petitioner or "have any problem being fair to the Commonwealth and the Defense in this case?" Harris-Coleman answered, "No, I can be fair." Accordingly, assuming Harris-Coleman is one of the jurors petitioner contends counsel should have challenged, counsel could reasonably have determined she was not biased and a motion to strike her for cause would have been futile. Graham stated he knew petitioner because he used to work with him. He was struck from the venire and did not serve as a juror. Petitioner does not identify the juror he claims "testified against [his] brother," and the record does not demonstrate any other member of the venire knew petitioner. Moreover, petitioner has failed to articulate why he believes the unidentified juror's alleged testimony against petitioner's brother resulted in any bias against petitioner. Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

(See id. (alteration in original).)  As explained below, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts.   See 28 U.S.C. §§ 2254(d)(1)-(2).

In Tabb's Memorandum of Law, he argues that "Juror, Jane Harris-Coleman was related to [him], . . . by the fact that she knew him from when they attended Charles City High School together." (ECF No. 1-1, at 6.)  Tabb argues that "[e]ven as far back as those days, Jane Harris-Coleman had a negative relationship with Todd Tabb and his brother."  (Id.)   Tabb also argues that "[m]ore recently, Jane Harris-Coleman, who as a security guard, was a witness who testified against Tabb's brother, John Tabb, . . . [testifying] that she saw John Tabb stealing gasoline out of a school bus." (Id.)  Additionally, Tabb argues that "[t]he second juror related to [him], Karen Smith, was a student who attended Charles City High School while Todd Tabb attended that school." (Id.)   Tabb argues that he "had an ongoing negative or strained relationship with juror Karen Smith as they had a long history of quarreling about various matters."  (Id.)   Tabb contends that "[s]imilarly, another prospective juror, a Mr. Wilbert Graham, during 'voir dire,' also stated he knew petitioner because he 'used to work with him.'  Yet, Mr. Graham was stricken for cause from the venire and did not serve as a juror." (Id.)  Tabb provides no further supporting argument or facts regarding his relationships with these jurors.

8

With respect to the sequence of events underlying this claim, during voir dire, the Circuit Court asked the venire persons whether any of them knew or were related to Tabb.  (Mar. 15, 2016 Tr. 15.)   Mr. Wilbert Graham raised his hand and stated that he knew Tabb because he "used to work with [Tabb]."  (Mar. 15, 2016 Tr. 15-16.)   The Circuit Court then stated "[w]e'll come back to that."  (Mar. 15, 2016 Tr. 16.)   Next, the Circuit Court again asked whether anyone was related to Tabb.  (Mar. 15, 2016 Tr. 16.) After the venire persons indicated that they were not related to Tabb, the following exchange occurred:

```
THE COURT:          Anyone else know Mr. Tabb?
MS. HARRIS-COLEMAN: Yes.
THE COURT:          How do you know him?
MS. HARRIS-COLEMAN: I know him from school.
THE COURT:          We'll come back to that one.  Anyone
                    else know Mr. Tabb?  (No response.)
                        . . . .
```

(Mar. 15, 2016 Tr. 16.)

When asked whether any of the venire persons knew the attorneys, the following exchange occurred:

```
THE COURT:     You know of Mr. Morrissey?
MS. SIMMONS:   Yes, not personally.
THE COURT:     You also raised your hand, would you
               state your name?
MR. KRAFT:     Arlen Kraft.  I knew of him when I
               was   with   the   Hopewell   Police
               Department.
MS. COTMAN:    I'd seen him on TV and stuff.
THE COURT:     Anyone else?
MS. SMITH:     My name is Karen Smith, same thing
               on TV and stuff.
```

9

```
THE COURT:              Do  any  of  you  have  any  special
                        interest  in  this  trial  or  the
                        outcome of the case?
JURY ANSWERING
IN UNISON:              No.
```

(Mar. 15, 2016 Tr. 17.)   The Circuit Court then posed additional

questions to all venire persons.

Subsequently, the Circuit Court provided the Commonwealth's

Attorney, Mr. Tyler, and Tabb's counsel, Mr. Morrissey, with an

opportunity to pose questions to the venire persons.   (See Mar.

15, 2016 Tr. 19-29.)   As relevant to Claim One, the following

exchange occurred:

```
MR. TYLER:      . . . .  Now, let me start with people
                who know the Defendant.  Mr. Graham, you
                said you know Mr. Tabb?
MR. GRAHAM:     Yes, work together.
MR. TYLER:      Did you know him for a long time?
MR. GRAHAM:     No, just worked.
MR. TYLER:      Let me ask you this, if you serve on the
                Jury and going back in that room after
                you've all heard the evidence and the law
                from the Judge, sitting there do you
                think you can be
MR. MORRISSEY:  I'm going to object.  That's not proper.
                The question is whether he can be fair
                and judge the evidence[.]
THE COURT:      Let me make a ruling.   You need to
                rephrase your question Mr. Tyler.
MR. TYLER:      Do you think after thinking about this
                for a while you might have to see him and
                would that make you not want to vote one
                way or the other?
MR. MORRISSEY:  I'm going to object again, your Honor,
                whether this will bother someone is not
                a proper question.  The question is can
                you give this Defendant a fair trial and
                the gentleman already said yes.
THE COURT:      Well, he did hesitate but he said he
                could give a fair trial.  Mr. Graham, you
```

|              |                                                  |
|--------------|--------------------------------------------------|
|              | hesitated when you answered the question whether or not you could be fair and impartial.  Do you think you can be fair and impartial not only to the Defendant but to the Commonwealth after you've heard the evidence? |
| MR. GRAHAM:  | Yes. |
| THE COURT:   | Are you pretty sure, I need a yes or no. |
| MR. GRAHAM:  | Yes. |
| MR. TYLER:   | Ms. Coleman, you said you know the Defendant also? |
| MS. COLEMAN: | Yes. |
| THE COURT:   | Please speak up.  The Court Reporter has to take all this down and I know him. |
| MR. TYLER:   | Do you think you can be fair to the Commonwealth and the Defendant? |
| MS. COLEMAN: | Yes. |

(Mar. 15, 2016 Tr. 20-21.)

|              |                                                  |
|--------------|--------------------------------------------------|
| MR. TYLER:   | Does anyone know Mr. Tabb's family? |
| THE COURT:   | Let me say when you raise your hand, before you answer the question would you please state your name for the record so we'll have a complete record? |
| MS. COLEMAN: | Yes. |
| MR. TYLER:   | Do you think you can sit in judgment of Mr. Tabb and would you have any problem being fair to the Commonwealth and the Defense in this case? |
| MS. COLEMAN: | No, I can be fair. |
| MR TYLER:    | The Commonwealth has a number of witnesses and one of our witnesses is Marcus Tyler and others.  Is anybody going to have a problem in this case just because due to the fact they might know somebody that's testifying?  So nobody would have a problem?  All right. |
|              | I will say this is supposed to be a one-day trial and I'll ask you all to pay close attention and follow the law and the facts.  Is there anybody here that can't sit here and listen to the witnesses and apply the facts and the law to the case? Anybody have a problem with that?  Mr. Graham? |
| MR. GRAHAM:  | I don't think so, all day is a long time. |

(Mar. 15, 2016 Tr. 22.)  The Commonwealth's Attorney then posed additional questions to the venire persons.  (Mar. 15, 2016 Tr. 22-25.)  Next, Tabb's counsel posed questions to the venire persons, including, <u>inter alia</u>, whether they were related to any law enforcement officers, whether they presumed that Tabb was innocent, whether anyone believed that "if you're being beaten and you fear for your life and you're in danger of serious bodily harm, you ought not be able to defend yourself," and whether anyone disliked counsel.  (Mar. 15, 2016 Tr. 25-29.)  Following his questioning, Tabb's counsel stated:  "Judge, I'm satisfied with the panel.  Thank you very much."  (Mar. 15, 2016 Tr. 29.)

The Circuit Court then stated:

> Thank you.  Mr. Tyler, any motions for cause?  If you five jurors over here on the side, would you take a seat back in the courtroom, please? Members of the Jury, we have twenty jurors and from the twenty, the attorneys will make a final selection and there will be twelve that hear the case.
> At this time, I'll ask the attorneys to take the Jury list.  While the attorneys are going through their final strike, they each have a right to strike four of you.  I have some preliminary information I'm going to provide to you to assist you in how this case is going to be presented to you.

(Mar. 15, 2016 Tr. 29.)  Subsequently, Mr. Graham and six other individuals were removed from the panel.  (Mar. 15, 2016 Tr. 33.)

Tabb argues that counsel "allowed not one, but two jurors to remain on the jury, even after [he] informed [counsel] of the conflict between [him] and the two jurors."  (§ 2254 Pet. 5.)  Tabb

contends that counsel's failure to remove the two jurors resulted in a "conflict of interest/partial jury, [and] manifest injustice." (Id.) Tabb identifies the two jurors as Jane Harris-Coleman and Karen Smith. (ECF No. 1-1, at 6.) As support for this claim, Tabb argues that in comparison to Ms. Harris-Coleman and Ms. Smith, both of whom remained on the panel, Mr. Graham, the other juror who indicated that he knew Tabb, was removed from the panel.[5] (Id.)

Assuming counsel knew of Tabb's concerns regarding Ms. Harris-Coleman and Ms. Smith, given the totality of the circumstances, Tabb fails to demonstrate that counsel acted deficiently by not moving to strike Ms. Harris-Coleman and Ms. Smith.[6] The record reflects that Ms. Harris-Coleman indicated that she knew Tabb "from school" and she knew Tabb's family. (Mar. 15, 2016 Tr. 16, 22.) When asked, Ms. Harris-Coleman indicated that she could be "fair to the Commonwealth and the Defendant." (Mar. 15, 2016 Tr. 21, 22.) Ms. Smith did not indicate that she knew Tabb, but stated that she had seen Tabb's counsel "on TV and stuff." (Mar. 15, 2016 Tr. 17.) Ms. Smith and all other venire persons indicated that they did not "know of any bias or prejudice

---

[5] From the record, it is unclear whether the Commonwealth or Tabb moved to strike Mr. Graham. (See Mar. 15, 2016 Tr. 33.)

[6] Counsel disputes that Tabb told him that there were "any personal conflicts between [Tabb] and any of the jurors." (ECF No. 7-1 at 1.)

that [they had] either for or against the Commonwealth or the Defendant for any reason." (Mar. 15, 2016 Tr. 18.) However, although Mr. Graham, the other juror who indicated that he knew Tabb, had stated that he could be fair to both Tabb and the Commonwealth, the Circuit Court noted that "[Mr. Graham] did hesitate but he said he could give a fair trial." (Mar. 15, 2016 Tr. 21.) Mr. Graham was one of the seven individuals removed from the panel. (Mar. 15, 2016 Tr. 33.)

In order to prevail on this claim, Tabb must overcome the "'strong presumption' that counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" Burch, 273 F.3d at 588 (quoting Strickland, 466 U.S. at 689). Given the circumstances recited above regarding voir dire, Tabb fails to demonstrate that counsel acted unreasonably by not moving to strike Ms. Harris-Coleman and Ms. Smith from the jury. A prospective juror with prior knowledge of a defendant or a crime can nevertheless "lay aside his [or her] impression or opinion and render a verdict based on the evidence presented in court." Irvin v. Dowd, 366 U.S. 717, 723 (1961) (citations omitted); see Murphy v. Florida, 421 U.S. 794, 802 & n.5 (1975) (upholding the seating of a juror, who was later rehabilitated, but initially stated on voir dire, "My experience of [the accused] is such that right now I would find him guilty."). The individuals selected as jurors for Tabb's trial, including Ms. Harris-Coleman and Ms. Smith,

assured the Circuit Court that they could do just. (See, e.g., Mar. 15, 2016 Tr. 18-19.) In comparison, Mr. Graham, one of the individuals who was removed from the panel, hesitated when he stated that he could be fair to both sides, and his hesitancy in answering this question distinguishes his response from the responses of the other prospective jurors, including Ms. Harris-Coleman and Ms. Smith. (See, e.g., Mar. 15, 2016 Tr. 20-22, 33.) Moreover, Tabb would not be entitled to strike Ms. Harris-Coleman or Ms. Smith, or an entire panel of jurors, simply because they heard something about the crime or the accused. Irvin, 366 U.S. at 722 ("It is not required, however, that the jurors be totally ignorant of the facts and issues involved."). Because Tabb fails to demonstrate deficiency of counsel or prejudice, it is RECOMMENDED that Claim One be DISMISSED.

### 2.   Claim Two – Counsel's Advice Regarding Appeal Rights

In Claim Two, Tabb argues that counsel rendered ineffective assistance because "counsel gave erroneous advice" and "displayed substandard performance during the proceedings" when "counsel told [Tabb] that he could not appeal a jury trial verdict." (§ 2254 Pet. 6.) In Tabb's state habeas petition, this claim was presented as Claim (c). (ECF No. 1-2, at 2-3.)

In explaining and rejecting Claim (c), which is presented as Claim Two here, the Supreme Court of Virginia explained:

15

In claim (c), petitioner contends he was denied the effective assistance of counsel when "trial counsel told petitioner he could not appeal the jury's verdict."

The Court holds claim (c) fails to satisfy the "prejudice" prong of the two-part test enunciated in Strickland. The record, including the sentencing transcript, the sentencing order, the affidavit of counsel, and trial counsel's post-sentencing letter to petitioner, demonstrates after the court sentenced petitioner, the court appointed new counsel, T. Scott Renick, to represent petitioner on a probation violation. Immediately after Renick was appointed, trial counsel asked the court to "also appoint counsel for [petitioner's] appeal on the malicious wounding conviction, if he chooses to appeal." The court agreed, then advised petitioner of his right of appeal and that the court was appointing Renick to represent petitioner on appeal "if you choose to note an appeal." Petitioner responded "Okay. All right. Thank you." The court then had Renick brought into the courtroom while the petitioner was present, and the court advised Renick he had been appointed to represent petitioner on the probation violation and on appeal from the malicious wounding conviction "if [petitioner] decides to note an appeal."

Petitioner does not contend Renick's performance was deficient in any respect or that he was denied an appeal he otherwise would have taken due to any action or inaction on Renick's part. Roe v. Flores-Ortega, 528 U.S. 470, 480 (2000). Rather, petitioner's claim addresses only trial counsel's alleged misadvice. Assuming trial counsel advised petitioner "he could not appeal the jury's verdict," the court told petitioner he had "the right to note an appeal to the Court's decision" and appointed new counsel to perfect that appeal if petitioner determined he wished to pursue it, and petitioner indicated his understanding of these proceedings. See United States v. Lambey, 974 F.2d 1389, 1395 (4th Cir. 1992) (en banc) (acknowledging a trial court may be able to correct or clarify earlier erroneous information given by a defendant's attorney where the defendant admits to understanding the court's advice). Furthermore, petitioner does not articulate any prejudice as a result of trial counsel's alleged misadvice. Thus, petitioner has failed to demonstrate that there is a reasonable probability that, but for

counsel's alleged errors, the result of the proceeding would have been different.

(Id. (alterations in original).)   As explained below, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts.   See 28 U.S.C. § 2254(d)(1)-(2).

The state court records show that at the conclusion of Tabb's sentencing hearing, Tabb indicated that his financial situation had changed, and the Circuit Court appointed counsel to represent Tabb for a subsequent probation violation matter.   (June 3, 2016 Tr. 16-18.)   Further, based on Tabb's counsel's request, the Circuit Court also appointed counsel for any potential appeal. (June 3, 2016 Tr. 18-19.)   Specifically, after the Circuit Court appointed counsel for the probation violation matter, the following exchange occurred:

| MS. MULLINS: | Your Honor, would the Court also appoint counsel for Mr. Tabb's appeal on the malicious wounding conviction, if he chooses to appeal? I'm not sure that he is. |
|---|---|
| THE COURT: | All right.<br>Mr. Tabb, you do have the right to note an appeal to the Court's decision.  If you so choose, since you're in a position at this point in time that you don't have the financial resources to do that, I'll appoint Mr. Renick to represent you on the appeal, if you choose to note an appeal.  All right? |
| DEFENDANT TABB: | Okay.  All right.  Thank you. |

(June 3, 2016 Tr. 18-19.)   Subsequently, Tabb, proceeding with counsel, appealed his conviction, and on October 17, 2017, the

17

Court of Appeals of Virginia denied the petition for appeal. Tabb v. Commonwealth, No. 1279-16-2 (Va. Ct. App. Oct. 17, 2017). Thus, Tabb was clearly aware that he had the right to appeal his conviction because the Circuit Court advised him of this right and he did in fact file such an appeal.

Given that the Circuit Court advised Tabb that he had the right to appeal his conviction and Tabb did in fact appeal his conviction, Tabb fails to identify any deficiency of counsel or resulting prejudice from counsel's advice regarding his appeal rights. See Strickland, 466 U.S. at 694. Because Tabb demonstrates neither deficiency of counsel nor resulting prejudice, it is RECOMMENDED that Claim Two be DISMISSED.

### 3. Claim Three – Counsel's Advice Regarding Guilty Plea

In Claim Three, Tabb contends that he was denied effective assistance of counsel because "counsel improperly withdrew the Government's plea offer." (§ 2254 Pet. 8.) Further review of Tabb's § 2254 Petition and related habeas submissions reflect that Tabb does not assert that counsel rejected the prosecution's plea offer without communicating with Tabb, but that "counsel misled [and] gave [Tabb] erroneous and inadequate advice during the plea-bargaining process" by "encourag[ing] [Tabb] not to enter into the Government's plea offer of a dispositional plea of 1 year and 6

18

6 months." (Id.; see ECF No. 1-1, at 8.)[7]  In Tabb's state habeas petition, this was presented as Claim (d).  (ECF No. 1-2, at 3.)

In rejecting Claim (d), which is presented as Claim Three here, the Supreme Court of Virginia found:

> In Claim (d), petitioner contends he was denied the effective assistance of counsel because the Commonwealth offered "the petitioner a plea of one year and six months" and trial counsel "talked the petitioner out of accepting the plea."
> The Court holds this portion of claim (d) satisfies neither the "performance" nor the "prejudice" prong of the two-part test enunciated in Strickland.  Petitioner was charged with aggravated malicious wounding, a Class 2 felony which carries a mandatory minimum penalty of twenty years' imprisonment and a maximum penalty of life imprisonment. Code §§ 18.2-51.2; 18.2-10(b).  Unlawful wounding, a class 6 felony, carries a term of imprisonment of not less than one year nor more than five years, or confinement in jail for not more than twelve months. Code §§ 18.2-51; 18.2-10(f). The record, including the affidavit of counsel and a letter signed by counsel and petitioner, demonstrates petitioner was charged with aggravated malicious wounding and the prosecutor offered to let petitioner plead guilty to unlawful wounding.  Counsel advised petitioner of the offer and explained the differences in petitioner's sentencing exposure.  Petitioner did not accept the offer but advised counsel he wished "to plead not guilty and try this case to a jury." Moreover, petitioner fails to explain how counsel "talked [him] out of accepting the plea" or even identify any other advice or information counsel provided him.  Thus, petitioner has failed to demonstrate that counsel's performance was deficient or that there is a reasonable probability that, but for counsel's alleged errors, the result of the proceeding would have been different.

---

[7] In Tabb's Memorandum of Law, he identifies Claim Three as "Claim 2." (ECF No. 1-1, at 7-8.)

(Id. (alteration in original).) As explained below, the Court discerns no unreasonable application of the law and no unreasonable determination of the facts. See 28 U.S.C. § 2254(d)(1)-(2).

"During plea negotiations defendants are 'entitled to the effective assistance of competent counsel.'" Lafler v. Cooper, 566 U.S. 156, 162 (2012) (quoting McMann v. Richardson, 397 U.S. 759, 771 (1970)). Generally, claims of ineffective assistance of counsel during the plea process fall into three categories. First, "the [complete] failure of a defense attorney to timely inform his client of a plea offer constitutes unreasonable professional assistance." United States v. Brannon, 48 F. App'x 51, 53 (4th Cir. 2002) (citations omitted); see Griffin v. United States, 330 F.3d 733, 737 (6th Cir. 2003). Second, a defense attorney's inaccurate advice or misinformation in conveying a plea offer may constitute deficient assistance. Brannon, 48 F. App'x at 53 (citations omitted); see United States v. Merritt, 102 F. App'x 303, 307-08 (4th Cir. 2004); Wolford v. United States, 722 F. Supp. 2d 664, 688 (E.D. Va. 2010) (concluding that counsel was deficient where he "misled [the petitioner] into believing that she had some possibility of prevailing at trial on the basis of several non-viable defenses"). Third, incomplete advice in conveying a plea also may provide a basis for a claim of ineffective assistance of counsel. See Wolford, 722 F. Supp. 2d at 689 (citing Strickland, 466 U.S. at 688) (concluding that "counsel's incorrect and

incomplete legal advice to [the petitioner] during the plea negotiation process was objectively unreasonable"); see also United States v. Day, 969 F.2d 39, 43 (3d Cir. 1992) (citing Hill v. Lockhart, 474 U.S. 52, 56-57 (1985); Von Moltke v. Gillies, 332 U.S. 708, 721 (1948)) ("[A] defendant has the right to make a reasonably informed decision whether to accept a plea offer.").

With respect to the advice provided by counsel regarding plea offers, in general, "[a] criminal defendant has a right to expect at least that his [or her] attorney will review the charges with [the defendant] by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure the defendant will face as a consequence of exercising" the option to plead guilty or to proceed to trial. Smith v. United States, 348 F.3d 545, 553 (6th Cir. 2003). Thus, when communicating a plea offer, counsel "should usually inform the defendant of the strengths and weaknesses of the case against him, as well as the alternative sentences to which he will most likely be exposed." Purdy v. United States, 208 F.3d 41, 45 (2d Cir. 2000) (citations omitted).

"On the other hand, the ultimate decision whether to plead guilty must be made by the defendant." Id. (citation omitted). "[A] lawyer must take care not to coerce a client into either accepting or rejecting a plea offer." Id. (citing Jones v. Murray,

947 F.2d 1106, 1111 (4th Cir. 1991)). In successfully steering a course between inadequate advice and coercing a plea, counsel enjoys a "wide range of reasonableness" and "[t]here are countless ways to provide effective assistance in any given case." Id. (citing Strickland, 466 U.S. at 689, 693). Accordingly,

> [c]ounsel rendering advice in this critical area may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea . . . , whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision.

Id.

The record reflects that the Circuit Court questioned Tabb about the voluntariness of his not guilty plea before the start of his trial. (Mar. 15, 2016 Tr. 8-12.) Tabb agreed that he had discussed the charge against him and possible defenses to the charge with his attorney. (Mar. 15, 2016 Tr. 9.) Tabb also agreed that he was "entirely satisfied with the services of [his] attorney," and that his attorney had not "failed to do anything [Tabb] asked him to do in preparation for [Tabb's] case." (Mar. 15, 2016 Tr. 9-10.) After questioning Tabb about his not guilty plea, the Circuit Court "accepted [Tabb's] not guilty plea," and found "that the pleas [had] been freely and voluntarily and intelligently made after conferring with his attorney." (Mar. 15, 2016 Tr. 12.) Further, in a January 28, 2016 letter from Tabb's

counsel, which Tabb signed acknowledging that the letter was "SEEN

AND AGREED," counsel stated:

> This letter is to discuss the offer you received to plead
> guilty to an unlawful wounding charge.  As we discussed,
> you are currently charged with aggravated malicious
> wounding which carries a potential penalty of 20-life in
> prison.  Unlawful wounding carries a potential penalty
> of up to 5 years.
>
> As you have discussed with Mr. Morrissey, you believe
> you are innocent of the charge of aggravated malicious
> wounding and it is your wish to plead not guilty and try
> this case to a jury.

(ECF No. 7-1, at 2.)

Tabb argues that counsel "misled[] [and] gave erroneous and

inadequate advice during the plea-bargaining process when he

stated, 'This trial will be a walk in the park[.]'" (ECF

No. 1-1, at 8.)  Tabb also argues that counsel "talked [Tabb] out

of the plea saying he could beat the case at trial, and not knowing

anything better [Tabb] agreed with him and went to trial." (Id.)

However, courts generally reject a defendant's self-serving

statement that, but for counsel's misadvice, the defendant would

have accepted the plea offer, unless such an assertion is coupled

with some objective evidence tending to support the defendant's

claim that he or she relied on counsel's erroneous advice.  See

Merritt, 102 F. App'x at 307-08 (citations omitted) (explaining

that counsel's "gross misadvice" about the maximum potential

sentence the defendant would be exposed to if he rejected the plea

offer can serve as objective evidence to support a defendant's

claim of prejudice); Diaz v. United States, 930 F.2d 832, 835 (11th Cir. 1991); see also Fields v. Atty. Gen. of Md., 956 F.2d 1290, 1297-98 n.19 (4th Cir. 1992). The record reflects that counsel conveyed the actual plea offer to Tabb, discussed the charge and possible defenses with Tabb, and advised Tabb about his sentencing exposure. (See, e.g., ECF No. 7-1, at 2; Mar. 15, 2016 Tr. 9.) Tabb ultimately rejected the plea offer. (See ECF No. 7-1, at 2.) The record also reflects that before proceeding to trial, Tabb agreed that he was "entirely satisfied with the services of [his] attorney," and that his attorney had not "failed to do anything [Tabb] asked him to do in preparation for [Tabb's] case." (Mar. 15, 2016 Tr. 9-10.) Besides Tabb's self-serving statements in his instant § 2254 Petition, Tabb fails to proffer any objective evidence to support his claim that counsel provided "erroneous and inadequate advice" regarding the plea offer. (ECF No. 1-1, at 8; see § 2254 Pet. 8.)

Furthermore, Tabb must show that "counsel's constitutionally ineffective performance affected the outcome of the plea process." Merzbacher v. Shearin, 706 F.3d 356, 363 (4th Cir. 2013) (quoting Hill, 474 U.S. at 59). Specifically, Tabb must demonstrate "a reasonable probability" that he "would have accepted the . . . plea offer" if he "had . . . been afforded effective assistance of counsel." Missouri v. Frye, 566 U.S. 134, 147 (2012); see Merritt, 102 F. App'x at 307. Such a showing requires a convicted defendant

to "present some credible, non-conclusory evidence that he would have [accepted the proffered plea] had he been properly advised." Sanders v. United States, 341 F.3d 720, 722 (8th Cir. 2003) (internal quotation marks omitted) (quoting Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995)).

The record reflects that Tabb testified at trial and maintained that he was innocent of the charge because he had acted in self-defense. (See, e.g., Mar. 15, 2016 Tr. 309-14.) The record also reflects that several witnesses testified at trial that the victim was the initial physical aggressor in the altercation and had thrown the first punch. (See, e.g., Mar. 15, 2016 Tr. 212, 236, 240, 247, 310.) Considering the defense evidence presented at trial that the victim was the initial physical aggressor, and Tabb's continued insistence that he was innocent of the charge because he had acted in self-defense (see, e.g., Mar. 15, 2016 Tr. 309-14; ECF No. 7-1, at 2), counsel's suggestion that he could successfully defend the case was reasonable.

Moreover, "[a] defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 225[4] claim that he would have pleaded guilty if only he had received better advice from his lawyer." Sanders, 341 F.3d at 723 (citing United States v. Stevens, 149 F.3d 747, 748 (8th Cir.

1998); Engelen, 68 F.3d at 241); see Chesney v. United States, 367 F.3d 1055, 1060 (8th Cir. 2004). That is the case here. Tabb's insistence that he was innocent of the charge because he had acted in self-defense belies his current assertion that he would have pled guilty, but for counsel's constitutionally deficient suggestion that he could successfully defend the case. See Jackson v. United States, 638 F. Supp. 2d 514, 581-82 (W.D.N.C. 2009) (concluding that in light of the petitioner's expressed desire to fight the charges, he failed to demonstrate a reasonable probability that he would have pled guilty during the window of opportunity in which to plead guilty); Goudie v. United States, 323 F. Supp. 2d 1320, 1335-36 (S.D. Fla. 2004) (rejecting petitioner's claim that he would have accepted the plea when, at the time the plea was open, the petitioner insisted he was innocent). Because Tabb has failed to demonstrate any deficiency of counsel or resulting prejudice, it is RECOMMENDED that Claim Three be DISMISSED.

**D. Conclusion**

For the foregoing reasons, it is RECOMMENDED that the Motion to Dismiss (ECF No. 5) be GRANTED, Tabb's claims be DISMISSED, and the § 2254 Petition (ECF No. 1) be DENIED.

Tabb is advised that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Such objections should be numbered and

identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. <u>See</u> Fed. R. Civ. P. 72(b). Failure to timely file specific objections to the Report and Recommendation may result in the dismissal of his claims, and it may also preclude further review or appeal from such judgment. <u>See</u> <u>Carr v. Hutto</u>, 737 F.2d 433, 434 (4th Cir. 1984).

The Clerk is DIRECTED to send a copy of the Report and Recommendation to Tabb and counsel of record.

/s/ _____

Roderick C. Young
United States Magistrate Judge

Date: February _8_ , 2019
Richmond, Virginia

27